IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT SABERI,

            Plaintiff,

    v.

CITY OF PORTLAND
and LAWRENCE E. BAIRD,

            Defendants.

No. CV 04-1396-MO

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

**MOSMAN, J.,**

      The parties tried this case to the court on May 16-17, 2006.  Plaintiff alleged two claims; a § 1983 claim against defendant Baird for excessive force in violation of the Fourth Amendment and for denial of equal protection under the Fourteenth Amendment, and state common law torts against the City of Portland.  The trial itself was, to a large degree, a contest of credibility.  Plaintiff alleged police misconduct in connection with his arrest and booking, and the officers involved denied it.  For the reasons given below, I find that a night of drinking had seriously eroded plaintiff's ability to accurately perceive or adequately remember what happened.  Further, I find the officers' testimony to be supported by the single most independent witness in the trial, Josh Miller.  I therefore find in favor of the defendants on all claims.

PAGE 1 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

**FINDINGS OF FACT**

1.  Mr. Saberi began a night of drinking just after work on March 12, 2004.  He met friends at the Veritable Quandary at about 5:30 p.m., then went to the Portland City Grill at about 8:00 p.m., and continued on to the Rock Bottom Brewery at about 10:00 p.m.  He joined a fairly large group of people at the Rock Bottom Brewery, including his friend Marc Powarczuk.  As Saberi himself testified, by this time in the evening Powarczuk was intoxicated and was asked to leave the Brewery after an altercation with a server.  Saberi and Powarczuk left with Andrew Hennen, Mark Shirley and  Jason Pond just after 11:00 p.m.

2.  Saberi and Powarczuk, and possibly others, then entered Bar 71.  Although the import of Saberi's testimony is that he never entered Bar 71, I credit Miller's testimony, who recalled the two of them in the bar.  I further credit his testimony that both men were intoxicated, although Powarczuk much more so, and that Miller eventually escorted Powarczuk out of the bar with Saberi following him.

3.  Very shortly after, Powarczuk bumped into someone one the street outside Bar 71.  This got the attention of Officer Elias, who stopped his patrol car.  Elias approached Powarczuk in order to take him into custody and deliver him to a detoxification facility.  This began at about 11:26 p.m.  It was actually in the street because a crowd of people mostly filled the sidewalk outside the bar.

4.  While Elias was dealing with Powarczuk, Saberi approached them in the street and tried to persuade Elias not to arrest his friend.  Elias believed, in the context of the setting where the arrest was taking place, that Saberi had come too close and posed an unacceptable risk.  Elias told Saberi to move back, off the street and on to the curb.  I credit Miller's testimony that Saberi was noncompliant, in that he moved away from Elias but then repeatedly approached him again.  Miller also testified that bystanders were telling Saberi to move back.  Because of this, and with his hands full trying to get Powarczuk in the car, Elias called for backup.

PAGE 2 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

5.  Sergeant Baird responded quickly to the scene.  Elias pointed out Saberi on the sidewalk and said he had been interfering with Elias.  I find that Elias did have probable cause to believe that Saberi had committed the offense of interfering with a police officer.  This authorized Saberi to be taken into custody.  Baird approached Saberi, asked him to step off the curb, and asked why he was interfering with Elias.  Saberi approached Baird but got too close. Baird testified he pushed Saberi back with his index finger on Saberi's chest.  Others testified Baird poked Saberi in the chest with his finger.  I find this to be a distinction without an important difference.

6.  Baird asked Saberi for identification.  Saberi got out his Oregon Driver's License, but as he handed it to Baird it fell to the ground.  When Baird reached down to pick it up, Saberi moved away and took out his cell phone.  Baird then started to put Saberi in handcuffs.  Saberi was not completely cooperative, such that it took some effort for Baird to get him in handcuffs. By this time, Officer Delenikos arrived and helped Baird handcuff Saberi and get him into Baird's car.  Several witnesses, including Saberi, testified that Baird was the only officer involved in the handcuffing.  This is contradicted by the testimony of Baird and Delenikos and by Miller's testimony that two officers, possibly three, were involved in Saberi's arrest.  I credit the witnesses who testified that both Baird and Delenikos were involved, and find that the contrary testimony of several witnesses reflects their diminished perception and memory that night.

7.  While Baird was handcuffing Saberi, the cell phone fell to the ground and broke in two pieces.  Baird picked them up and did his best to reattach them.

8.  Baird then drove Saberi to the Old Town Precinct ("OTP").  Saberi alleges that during the drive to OTP, Baird asked about his ethnicity and made numerous threats and discriminatory comments about it.  The clear implication of plaintiff's allegations is that plaintiff's ethnicity fueled Baird's anger and subsequent misconduct.  In light of the various factors that cut against plaintiff's perception and memory, I do not credit plaintiff's allegations of discrimination.

9.  Baird drove Saberi to the Old Town Precinct ("OTP").  He opened the back door to get Saberi out of the car.  When Saberi got out of the car, he made a move as if to get away.  Baird pushed him in the direction of his move so as to take him to the ground.  Saberi and Baird went to down to the ground.  Baird put Saberi on his stomach, with Baird's knee on his back/shoulder, and told Saberi to settle down.  By this time, Officer Kile had joined them from inside OTP and helped Baird get Saberi inside the precinct.

10.  This is, of course, where the stories collide.  Saberi's testimony is that Baird had been repeatedly threatening him during the drive, including ethnic slurs.  When they arrived at OTP, Saberi's testimony is that Baird got him out of the car and severely beat him on the sidewalk outside OTP.  I find that even an officer capable of such a beating would be extremely unlikely to do so in front of a precinct office on a public sidewalk in a fairly busy part of downtown Portland.  I further find that the other significant gaps in plaintiff's testimony regarding Bar 71 and the presence of Delenikos cut against the overall credibility of plaintiff's version of events.  I therefore credit the version of events told by Baird over that of Saberi.

11.  Baird took care of paperwork at OTP.  A few minutes later, Officer Elias arrived at OTP with Powarczuk.  After some discussion and moving people around, Elias left with Powarczuk.  At that point, Baird noticed that he had neglected to double lock Saberi's handcuffs. As a consequence, they were too tight, so Baird loosened them.

12.  When Elias returned, he was directed to take Saberi to the jail for booking.  Saberi testified that just before putting Saberi in his car, Elias (whose name he did not know) told him to run away and he would not chase him.  The court had the opportunity to hear the testimony of Saberi on this point.  Elias also testified, and denied it ever happened.  Besides the inherent implausibility of the tale, I find Elias' manner while testifying to be entirely credible.  That Saberi would so testify is another leak in the bucket of his credibility.

13.  While being booked, Saberi was photographed and fingerprinted.  Despite his original testimony that he was only photographed head-on, the evidence included a side-view

photograph taken that same night.  None of the photos provide any solid evidence of the beatings Saberi described.  His cell phone was returned to him when he was released from the jail facility early the next morning.

## CONCLUSIONS OF LAW

1.  Plaintiff brings separate claims against the two defendants.  His claims against Baird are for violations of the Fourth and Fourteenth Amendments (excessive force and denial of equal protection).  These claims are brought under 42 U.S.C. § 1983 against Baird individually.  *Bd. of County Comm'rs. v. Brown*, 520 U.S. 397, 403 (1997) (municipality not liable for employee/ tortfeasor acts unless done pursuant to municipal policy or custom).  Plaintiff also alleges state common law claims for assault, battery, false imprisonment, negligence and conversion.  Under the Oregon Tort Claims Act, ORS § 30.265(1), these claims are brought against the City and not Baird individually.

2.  The first part of plaintiff's First Claim for Relief is the allegation of excessive force.  Claims of excessive force in the course of an arrest are analyzed under the Fourth Amendment's "reasonableness" standard.  *Graham v. Connor,* 490 U.S. 386, 395 (1989).  This involves balancing the intrusion on the person's liberty with the countervailing government interest at stake.

3.  Plaintiff's excessive force claim stands or falls on the credibility of his version of what Officer Baird did to him that night.  As previously explained, I reject plaintiff's version of events.  Shorn of plaintiff's allegations, nothing else that occurred that evening represents an unreasonable or excessive use of force.  I have also found that the arrest itself was based on Office Elias' probable cause to believe that a crime had been committed by plaintiff in his presence.  I therefore find in favor of defendant Baird and against plaintiff on the Fourth Amendment claim.

4.  Plaintiff also alleges Baird used ethnic slurs against him in the course of the arrest, and that the use of the slurs, and the implication that his ethnicity was the motive for Baird's

misconduct, violated his rights under the Fourteenth Amendment.  As with his excessive force claim, plaintiff's allegation of a denial of equal protection turns on the credibility of his version of events that night.  As previously noted, I have not credited plaintiff's version of these events related to his Fourteenth Amendment claim.  I further note that in plaintiff's proposed findings of fact and conclusions of law, he concedes his Fourteenth Amendment claim, although for different reasons than expressed here.  *See* Plaintiff's Proposed Findings of Fact and Conclusions of Law #127.

     5.    Plaintiff's assault claim against the City fails for reasons very similar to the failure of his excessive force claim.  As plaintiff concedes, under Oregon law the core of an assault claim against a police office is whether the force used in making the arrest was reasonable.  *Gigler v. City of Klamath Falls,* 21 Or. App. 753, 763, 537 P.2d 121, 126 (1975).  That is, while there must be an intent to injure, the word "injure" refers to legal injury, and does not include injury that was the result of reasonable force used in the performance of the officer's duties.  *Cook v. Kinzua Pine Mills Co.,* 207 Or. 34, 48, 293 P.2d 717, 723 (1956).  Here, plaintiff's assault claim prevails only if his version of events regarding the amount of force used during his arrest and at OTP is accepted.  Instead, I have rejected that version of events.  Nothing else that did in fact occur that evening amounts to assault.  Therefore, I find in favor of the City and against plaintiff on the state common law assault claim.

     6.    The same is true of plaintiff's common law claim for battery.  Plaintiff's theory depends on the application of unreasonable force.  I have rejected the allegations of unreasonable force.  The force that was actually used, including the takedown at OTP, was reasonable under the circumstances.  The same is true of other events, such Baird poking or pushing plaintiff away with his finger.  I find in favor of the City and against plaintiff on the battery claim.

     7.    The essence of a false imprisonment claim, in this context, is unlawful detention. *Stone v. Finnerty,* 182 Or. App. 452, 458, 50 P.3d 1179, 1185 (2002).  In this case, the detention was not unlawful.  As I have previously held, Elias had probable cause to have Saberi arrested,

PAGE 6 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

detained, and booked at the jail facility.  The crime was not only committed in his presence, but is classified as a Class A misdemeanor, which  justifies arrest under ORS 133.310(1).  I have credited the testimony of Elias, buttressed by the testimony of Miller, as to plaintiff's actions in connection with Elias that night.  Those actions provide Elias with probable cause.  Baird was authorized to use reasonable force, including handcuffing and jailing plaintiff, in connection with the arrest.  I therefore find in favor of the City and against plaintiff on the false imprisonment claim.

8.  I have recently discussed the interplay between a state common law negligence claim and § 1983 in *Shilo, et al. v. City of Portland, et al.,* CV-04-130.  I reiterate what I held there; that a state common law negligence claim may be maintained separately from a § 1983 claim only when  the negligence claim is based on facts that are distinct from the facts on which the § 1983 claim is based.  Here, the negligence claim is based on the same operative facts as the § 1983 claim.  It is therefore not a proper basis for a separate negligence claim.  Nor can assault and battery, which are intentional, form the basis for a negligence claim.  *See Denton v. Arnstein,* 197 Or. 28, 45, 250 P2d 407, 415 (1952).  Plaintiff does not allege, or do I find, any separate evidence that would support a finding of some sort of supervisory negligence by the City.  In plaintiff's Proposed Findings, he contends Baird was negligent in the events that led to the damage to his cell phone.  I find that under all the circumstances, plaintiff's acts of getting out his cell phone and walking away in the middle of a stop or arrest by an officer reasonably led to the officer physically detaining him.  Baird's conduct did not create an unreasonable risk of harm to plaintiff's property.  I therefore find for the City and against plaintiff on the negligence claim.

9.  Plaintiff concedes the conversion claim in his Proposed Findings #145.  I agree with that concession, in that the evidence does not support an intentional exercise of dominion or control over the property at issue–plaintiff's cell phone.  *See Willamette Quarries, Inc. v. Wodtli,*

PAGE 7 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

308 Or. 406, 413, 781 P.2d 1196, 1201 (1989).  I therefore find for the City and against plaintiff

on the conversion claim.

      DATED this __18th__ day of September, 2006.


                       /s/ Michael W. Mosman_____
                       MICHAEL W. MOSMAN
                       United States District Judge

PAGE 8 - FINDINGS OF FACT AND CONCLUSIONS OF LAW